IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ALEX E. COOPER,<br>  Pro Se<br><br>        Intervenor-Plaintiff,<br><br>v.<br><br>CHESAPEAKE BAY GOLF CLUB,<br>  LIMITED PARTNERSHIP,<br><br>        and<br><br>CHESAPEAKE BAY GOLF CLUB<br>  (WEST), L.P.,<br><br>        Defendants. | *<br>*<br>*<br>*<br>*   Civil Case No. RDB 05-2552<br>*<br>*<br>*<br>*<br>*<br>* |

* * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM OPINION

Intervenor-plaintiff Alex Cooper ("Cooper"), proceeding in proper person, has filed an intervenor complaint in this action against Chesapeake Bay Golf Club, Limited Partnership and Chesapeake Bay Golf Club (West), L.P. ("CBGC"). The complaint alleges violations of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e, *et seq*. ("Title VII"). The complaint was filed in this Court on January 4, 2006. Pending before this Court is CBGC's Motion for Sanctions and to Dismiss Cooper's complaint pursuant to this Court's inherent power to sanction bad faith conduct, the Doctrine of Unclean Hands, and Federal Rule of Civil Procedure ("Rule") 41(b). CBGC has also moved for an award of attorneys' fees and costs. For the reasons set forth below, the Defendants' Motion for Sanctions and to Dismiss is GRANTED, and the Defendants will be awarded attorneys' fees and costs upon submission and review by this Court.

BACKGROUND

Cooper is a former employee of CBGC.  On August 31, 2004, CBGC terminated Cooper from his position of executive chef.  On October 24, 2004, Cooper brought a formal complaint before the Equal Employment Opportunity Commission ("EEOC"), charging CBGC with racial discrimination pursuant to Title VII for terminating him because of his race.  On September 14, 2005, EEOC filed a complaint in this Court, charging CBGC with violations of Title VII.  (Compl. ¶ 9.)  On December 8, 2005, Cooper, under the advice of counsel, filed a motion to intervene in the action, which this Court granted on January 4, 2006.  Later that day, Cooper filed a complaint in this Court, alleging that CBGC's actions violated Title VII.  (Intervenor Compl. ¶ 13.)

CBGC deposed Cooper on June 2, 2006.  During the deposition, Cooper answered "no" to questions "have you ever been convicted of a crime" and "have you ever been arrested."  (Def.'s Mem. Mot. Dismiss Ex. 5 at 272 [hereinafter "Ex. 5"].)  Subsequently, CBGC discovered evidence that Cooper has been arrested and prosecuted four times, and that he has four criminal convictions arising out of two separate prosecutions.  (Def.'s Mem. Mot. Dismiss Ex. 6-10.)  At the time of his deposition, Cooper's probation from his most recent criminal conviction was still in effect.  (Def.'s Mem. Mot. Dismiss Ex. 7 at 8.)  Cooper also answered "no" to the question "have you ever been sued."  (Ex. 5 at 271.)  CBGC discovered evidence that Cooper has been a defendant in four civil suits, including two protection from abuse suits and one suit for delinquent child support payments.  (Def.'s Mem. Mot. Dismiss Ex. 18.)

At his deposition, Cooper refused to answer questions regarding his receipt of a net $40,000 workers compensation settlement, testifying that the workers compensation judge told him not to discuss the case.  (Ex. 5 at 44-48.)  However, the transcript of the workers

2

compensation hearing on August 16, 2004 contains no instruction from the workers compensation judge to Cooper that he could not discuss the hearing or the settlement.  (Def.'s Mem. Mot. Dismiss Ex. 26.)  Cooper also testified that after his termination from CBGC, he was denied unemployment compensation.  (Ex. 5 at 274.)  However, Cooper did receive unemployment compensation benefits.  (Def.'s Mem. Mot. Dismiss Ex. 29.)

     Cooper produced one document from his Wachovia bank account showing a negative balance, which at his deposition, Cooper testified was evidence that he "ran out of money." (Ex. 5 at 277.)  Cooper seeks emotional distress damages from CBGC, claiming that his termination caused him emotional problems because he felt like  "less of a man" and "couldn't provide for [his] kids." (Ex. 5 at 259.)  CBGC subpoenaed Wachovia for all of Cooper's records during his period of unemployment.  However, Cooper notified Wachovia that it should not produce any records in response to the subpoena.  (Def.'s Mem. Mot. Dismiss Ex. 28.)

     On July 14, 2006, CBGC filed the subject Motion for Sanctions and to Dismiss as a sanction for Cooper's perjury during his deposition and other misconduct.  (Paper No. 21.)  On July 20, 2006, EEOC filed a Response to Motion.  (Paper No. 22.)  In light of this perjury and misconduct, on July 21, 2006, EEOC filed a Motion to Dismiss its Complaint against CBGC (Paper No. 23), which this Court granted on August 2, 2006.  Also on July 21, Cooper's attorney filed a Motion to Withdraw as Attorney (Paper No. 25), which this Court granted on July 24, 2006.  Pursuant to this Court's Order of July 1, 2006, Cooper, either proceeding in proper person or by representation of counsel, was ordered to file a response to the subject Motion by September 19, 2006.  On October 4, 2006, Cooper's one-page letter to the Court was filed as his Response to the subject Motion for Sanctions and to Dismiss.  (Paper No. 30.)

APPLICABLE STANDARDS OF LAW

I.      **Inherent Power of the Courts to Sanction Bad Faith Conduct**

     **A.**      **Dismissal**

The Supreme Court of the United States has held that federal courts have the inherent authority "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R. Co.,* 370 U.S. 626, 630-31 (1962). To that end, a federal district court possesses the inherent power to dismiss the complaint of one "who defiles the judicial system by committing a fraud on the court." *Aoude v. Mobil Oil Corp.,* 892 F.2d 1115, 1118 (1st Cir. 1989); *see also, Wyle v. R.J. Reynolds Indus., Inc.,* 709 F.2d 585, 589 (9th Cir. 1983) (finding "courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice"). Were the courts not granted this discretion, they would be unable to defend "their integrity against unscrupulous marauders." *Aoude,* 892 F.2d, at 1117. However, given the severity of dismissal as a remedy, a district court may dismiss a case only "when circumstances make such action appropriate." *Link,* 370 U.S. at 1390.

     **B.**      **Attorneys' Fees**

The general rule in federal courts is that a litigant cannot recover his attorney's fees. *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 765 (1980). However, federal courts have inherent power to assess attorneys' fees in narrowly defined circumstances, including where the opposing party has acted in bad faith. *Id.* at 765-66; *Henley v. Alcon Labs., Inc.*, 277 F.3d 535, 543 (4th Cir. 2002). The bad-faith exception is not restricted to cases where the action is filed in bad faith. "'[B]ad faith' may be found, not only in the actions that led to the lawsuit, but also in the

4

conduct of the litigation." *Roadway*, 447 U.S. at 766 (quoting *Hall v. Cole*, 412 U.S. 1, 15 (1973)). In *Roadway*, the Supreme Court noted that this view coincided with its ruling in *Link*, *supra*, which approved judicial power to dismiss a case not because the substantive claim was without merit, but because the plaintiff failed to pursue the litigation. *Id.* The Supreme Court has stated that a court may assess attorneys' fees against a party "if a court finds 'that fraud has been practiced upon it, or that the very temple of justice has been defiled.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) (quoting *Universal Oil Prod. Co. v. Route Ref. Co.*, 328 U.S. 575, 580 (1946)). According to the United States Court of Appeals for the Fourth Circuit, bad faith sanctions may be applied to counsel "as well as to litigants." *LaRouche v. Nat'l Broad. Co., Inc.*, 780 F.2d 1134, 1140 (4th Cir. 1986).

## II.     Doctrine of Unclean Hands

"He who comes into equity must come with clean hands." This maxim bars a plaintiff from seeking judicial relief when he is "tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814-15 (1945). Although the maxim originated in courts of equity, it now extends to actions at law: "One who has had the door of a court of equity closed in his face because of his fraud may not have relief by the simple device of beginning again and labeling his suit an action at law for damages." *Mas v. Coca-Cola Co.*, 198 F.2d 380, 381 (4th Cir. 1952) (upholding dismissal of patent action at law for damages, following dismissal, on the ground of "unclean hands," of equitable suit involving same patent); *see also Smith v. Cessna Aircraft, Co.*, 124 F.R.D. 103, 106 (D. Md. 1989) (applying the doctrine to an action at law).

The plaintiff's misconduct must be directly related to the subject of the suit: "[Courts]

5

apply the maxim requiring clean hands only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation." *Keystone Driller Co. v. Gen. Excavator Co.,* 290 U.S. 240, 245 (1933) (citations omitted). While most cases applying the doctrine involve situations in which the plaintiff's hands were unclean at the time suit was filed, courts have also applied the maxim when the plaintiff's hands became soiled during the course of litigation. *E.g.*, *Mas v. Coca-Cola Co.*, 163 F.2d 505, 508 (4th Cir. 1947) (finding that fabrication of testimony and subornation of perjury are grounds for applying doctrine). The purpose of the maxim is to safeguard the judicial process. *Id.* at 507. The court possesses broad discretion in determining whether and how to apply the maxim upon learning that a plaintiff's hands are unclean. *Precision Instrument,* 324 U.S. at 814. Thus, courts "are not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion." *Keystone Driller Co.,* 290 U.S. at 245-46.

**III.   Rule 41(b)**

Rule 41(b) provides, in pertinent part: "For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant." FED. R. CIV. P. 41(b). Most cases applying Rule 41(b) address either the plaintiff's failure to prosecute or the failure to comply with court orders; few cases consider the ground of failure to obey the rules themselves. As Wright and Miller note, "Dismissal for failure to comply with 'these rules' ... is an amorphous ground that, if read literally, would allow dismissal for the most trivial noncompliance with the rules.... Dismissals on this ground are considered in connection with the particular rule that has been invoked by defendant." 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2369

(1971).  *See*, *e.g.*, *Nassau County Ass'n of Ins. Agents, Inc. v. Aetna Life & Casualty Co.,* 497 F.2d 1151, 1154 (2d Cir.), *cert. denied,* 419 U.S. 968 (1974) (dismissal for misjoinder, under Rule 20(a), of 164 defendants; plaintiff's actions were "a gross abuse of procedure").

DISCUSSION

I.     **Inherent Power of the Courts to Sanction Bad Faith Conduct**

   A.     **Dismissal**

CBGC requests that this Court use its inherent power to dismiss Cooper's complaint as a sanction for his bad faith conduct and abuse of the judicial process.  A "fraud on the court" occurs where there is clear evidence that a party has engaged in the litigation process in a manner that intentionally prevents the court from impartially adjudicating the claim, as by impeding its opponent from accessing information relevant to its claim or defense.  *See*, *e.g.*, *Aoude,* 892 F.2d at 1118; *Alexander v. Robertson,* 882 F.2d 421, 424 (9th Cir. 1989); *Pfizer, Inc. v. Int'l Rectifier Corp.,* 538 F.2d 180, 195 (8th Cir. 1976).  Here, Cooper engaged in a comprehensive fraudulent scheme by providing intentionally false deposition testimony to hide evidence of high relevance to his claim for damages from CBGC.  Cooper intended to gain an unfair advantage in the litigation, and his actions hindered CBGC's ability to prepare its defense.

By hiding his arrests in December 2004 and March 2005, Cooper obstructed CBGC's ability to challenge and investigate whether these criminal proceedings were the cause of, or an important factor contributing to, Cooper's allegedly severe emotional distress.  Cooper's falsehoods regarding civil litigation similarly obstructed CBGC's ability to defend against

Cooper's claim that he is emotionally distraught because his termination left him incapable of supporting his loved ones and gaining subsequent employment.

Further, Cooper attempted to perpetrate a fraud in this case by not truthfully disclosing his true financial situation regarding a $40,000 net workers compensation settlement he received from a prior employer in late August 2004 just prior to his separation from CBGC, and unemployment compensation benefits he received after his termination. Cooper's actions hindered CBGC's ability to prepare an adequate defense to Cooper's claim that he was financially destitute, and, as a result, emotionally distraught, because of his separation from CBGC. In addition, Cooper attempted to conceal his financial situation and his possible disincentive to diligently seek new employment, which is highly relevant to Cooper's request for back pay.

In sum, this Court concludes that CBGC has established by clear and convincing evidence that Cooper sought to perpetrate a fraud on all concerned, including CBGC, EEOC, Cooper's own counsel, and the Court. Upon the discovery of Cooper's subterfuge, EEOC dismissed its complaint against CBGC, and Cooper's attorney withdrew his representation. Despite overwhelming evidence of his deceit, Cooper continued to attempt to deceive this Court by claiming that he had never been arrested or convicted of a crime in his Response to CBGC's Motion to Dismiss. (Paper No. 30.) This continued denial is made in the face of clear documentation of his criminal record which was provided to this Court by CBGC in the exhibits attached to its Motion.

In determining the appropriate sanction for Cooper's fraud, this Court balances the policy favoring adjudication on the merits with competing policies such as deterrence and the need to

maintain institutional integrity.  *See Aoude*, 892 F.2d at 1118.  Cooper's actions are clearly egregious.  His fraud has severely tainted the trial process, including CBGC's ability to prepare a defense.  *See Silvestri v. Gen. Motors Corp.*, 271 F.3d 583 (4th Cir. 2001) (asserting that even where conduct is less culpable than bad faith, "dismissal may be necessary if the prejudice to the defendant is extraordinary, denying it the ability to adequately defend its case").  Thus, this Court concludes that dismissal is the proper sanction to impose in the instant case, as any lesser sanction will be ineffective.

### B. Attorneys' Fees

As discussed *supra*, this Court finds by clear and convincing evidence that Cooper has committed a fraud against this Court.  Thus, this Court concludes that it would be appropriate to impose a sanction in the form of attorneys' fees incurred by CBGC in discovering and responding to Cooper's bad faith conduct.  *See Chambers*, 501 U.S. at 54-55 (affirming sanction of attorneys' fees where petitioner perpetrated fraud on the court and acted in bad faith toward his adversary and the court throughout the course of the litigation).  Such a sanction is appropriate despite Cooper's *pro se* status.  *See Balcar v. Bell & Associates, LLC*, 295 F. Supp. 2d 635 (N.D.W.V. 2003), *aff'd*, 83 Fed. Appx. 519 (4th Cir. 2003) (imposing sanction of attorneys' fees against *pro se* litigant based on evidence of bad faith).  Thus, this Court will award appropriate attorneys' fees to CBGC after its review of the submission of attorneys' fees and costs by CBGC within 14 days of the entry of the Order which follows this Opinion.

## II. Doctrine of Unclean Hands

Alternatively, it can hardly be disputed that Cooper's hands are unclean with respect to a matter at issue in this litigation.  As discussed *supra*, Cooper made various attempts at

subterfuge with respect to his claims for damages that allegedly resulted from his dismissal from CBGC, thus hindering CBGC's ability to prepare a defense.  Further, Cooper's misrepresentations about his past convictions obstructed this Court's ability to make a proper analysis regarding the admissibility of his past convictions under Federal Rule of Evidence 609.  This Court finds that Cooper committed a fraud on the Court by knowingly providing false testimony at his deposition, thereby soiling his hands during the course of litigation, and that the fraud is directly related to the question of damages in this case.  Consequently, this Court concludes in the alternative that dismissal is proper pursuant to the doctrine of unclean hands.

**III.    Rule 41(b)**

Finally, CBGC asserts that Cooper's perjury at his deposition constitutes a violation of the Federal Rules of Civil Procedure, thus warranting dismissal pursuant to Rule 41(b).  Party depositions are governed by Rule 30, which provides in pertinent part:

> Examination and cross-examination of witnesses may proceed as permitted at the trial under the provisions of the Federal Rules of Evidence.  The officer before whom the deposition is to be taken shall put the witness on oath and shall personally, or by someone acting under the officer's direction and in the officer's presence, record the testimony of the witness.

FED. R. CIV. P. 30(c).  As discussed *supra*, Cooper lied during his deposition on June 2, 2006.  Rule 30 does not specifically demand that answers in depositions be truthful; however the requirement that answers be given under oath would be void if giving false answers constituted compliance with the Rule.  *Cessna*, 124 F.R.D. at 108.  Cooper's perjury misled CBGC as to its potential liability.  *See id.* (asserting that plaintiff's perjury in deposition "undoubtedly misled the defendants in assessing their potential liability," and concluding that plaintiff's perjury

during discovery constituted a violation of the Rules warranting sanctions under Rule 41(b)). Thus, this Court concludes that Cooper's deliberate perjury during discovery constitutes a violation of the Federal Rules warranting sanctions under Rule 41(b).

The Fourth Circuit has established four criteria that this Court must consider when Rule 41(b) is invoked to determine the appropriate sanction:

> (1) the degree of personal responsibility on the part of the plaintiff; (2) the amount of prejudice to the defendant caused by the delay; (3) the presence or absence of a "drawn out history" of "deliberately proceeding in a dilatory fashion;" and (4) the effectiveness of sanctions less drastic than dismissal.

*Davis v. Williams*, 588 F.2d 69, 70 (4th Cir. 1978) (quoting *McCargo v. Hedrick*, 545 F.2d 393, 396 (4th Cir. 1976)).

First, there is no doubt that Cooper is solely responsible for his perjury. When the truth about his false statements came to light, his attorney withdrew from the case and EEOC dismissed its complaint. Thus, this case differs dramatically from cases in which the attorney, rather than the client was at fault. *See*, *e.g.*, *McCargo*, 545 F.2d at 396 (dismissal inappropriate sanction for attorneys' failure to file pretrial order on time). Second, as discussed *supra*, Cooper's perjury has prejudiced CBGC's ability to prepare a defense. Further, Cooper's behavior casts doubt on the credibility of his entire testimony both during the deposition and at trial. In regard to the third factor, the focus is on the intentional nature, as well as the pattern, of Cooper's conduct. *Cessna*, 124 F.R.D. at 110. Here, Cooper deliberately provided false testimony during his deposition, and he continued to misrepresent his criminal history in subsequent writings submitted to this Court. Finally, as discussed *supra*, this Court concludes that dismissal is the only effective sanction. Thus, apart from the application of the inherent

11

power of this Court, and the Doctrine of Unclean Hands, the mandates of Rule 41(b) support dismissal of this case.

## CONCLUSION

For the reasons set forth above, the Defendants' Motion for Sanctions and to Dismiss is GRANTED, and they shall be awarded attorneys's fees and costs after a review of said fees and costs by this Court. A separate Order follows.

/s/
Richard D. Bennett
United States District Judge

Date:   October 25, 2006